LaROSE, Judge.
Edward J. Allard appeals the trial court’s order granting Al-Nayem International, Inc., a new trial as to damages suffered by Al-Nayem for Mr. Allard’s breach of a warranty deed. See Fla. R.App. P. 9.130(a)(4); 9.110(a)(4). Al-Nayem cross-appeals, challenging an earlier final order involuntarily dismissing its damages case. See Fla. RApp. P. 9.110(g).[1] We affirm as to the involuntary dismissal but reverse the order granting rehearing.
Al-Nayem purchased commercial property from Mr. Allard for $1,650,000. The property had a restaurant and paved parking lot on its west side. A thirty-foot-wide drainage ditch crossed an unimproved portion on the east side. Al-Nayem later discovered that the Florida Department of Transportation (DOT) actually owned the ditch.
Al-Nayem sued Mr. Allard for breach of the warranty deed. It also sued the title company for breach of the title policy. The trial court entered an order finding Mr. Allard and the title company in breach.[2] The trial court recognized that
[t]he loss of the 30 foot swale decreases the plaintiffs ability to develop the property as it limits the size of any building which could be constructed to replace the decrepit and now closed ... restaurant. In addition, the loss of the swale strands a small sliver of the property which also affects how the property can be developed.
The trial court then held a nonjury trial on damages. Al-Nayem relied on Burton v. Price, 105 Fla. 544, 141 So. 728 (1932), apparently the only Florida Supreme Court case addressing the measure of damages for breach of the covenant of seisin.[3] The supreme court addressed *200 whether the buyer could recover for breach. Id. at 728-29. Burton held that:
the vendee may recover, if there be a failure of seizin as to a part of the premises described in the deed, and in such case the measure of damages is such fractional part of the whole consideration paid as the value at the time of the purchase of the part to which the title failed bears to the whole block purchased ....
Id. at 729. Burton did not explain how to apply its measure of damages. Nor did it indicate how improvements on property might impact value.
Al-Nayem reasoned that Burton required a simple arithmetic approach: divide the square footage of the DOT-owned ditch by the total square footage of the property and then multiply that number by the total purchase price. Mr. Allard argued that a different formulation of Burton applied, especially when dealing with improved property. He contended that Hillsboro Cove, Inc. v. Archibald, 322 So.2d 585 (Fla. 4th DCA 1975), clarified that damages are based on the proportionate value of the excluded land, not its proportionate area. In that case, Hills-boro Cove discovered that a thirty-foot strip in a parcel of property it purchased belonged to someone else. Id. Hillsboro Cove had planned to construct part of a condominium there. It spent over $50,000 to secure title to the strip. Id. The trial court awarded Hillsboro Cove only $6011.88 in damages. Id. The Fourth District affirmed, holding that Burton’s “value at the time of the purchase of the part to which the title failed bears to the whole block purchased” means "the proportionate value of the strip, not the proportionate area....” Id. at 586 (emphasis added). The Fourth District observed that “[t]he trial court as the trier of fact could find from the evidence that the 30-foot strip of property was not of any greater value per square foot than the major piece.” Id. (also citing Williams v. Azar, 47 So.2d 624 (Fla.1950) (holding that grantor should pay costs of clearing title not to exceed the original proportionate value of the land at the time of purchase)).
Mr. Allard presented the trial court with cases from other jurisdictions to support his interpretation of Burton. See Edwards v. Johnson, 227 Ark. 345, 298 S.W.2d 336, 337 (1957) (“[Where] [t]here is nothing to indicate that the parties dealt in terms of a fixed price per acre without reference to the improvements^] ... the purchaser’s loss is equitably determined by first deducting the value of the improvements from the purchase price and then calculating the damage attributable to the shortage of acreage.”); Wiedeman v. Brown, 307 Ky. 231, 210 S.W.2d 764, 764-66 (1948) (determining that measure of damages for a small portion of a substantial tract separable from the part enhanced by the improvements was the average value of the land without the improvements); Anzalone v. Strand, 14 Mass.App.Ct. 45, 436 N.E.2d 960, 963 n. 1 (1982) (holding that the trial court improperly calculated the buyer’s damages by prorating the purchase price in direct proportion to the diminution in square footage without deducting the value of improvements; listing cases from numerous jurisdictions rejecting strict prorating formula when dealing with improved property); Tinsley v. Hearn, 136 Tenn. 586, 191 S.W. 127, 128 (1917) (holding that damages must be calculated by multiplying the number of acres of the deficiency by the average value per acre of the whole without the improvements).
Mr. Allard agreed that Burton applied. But, he argued that Al-Nayem’s methodology was flawed for failing to account for improvements on the property. Al-Nay- *201 em insisted that Burton required the arithmetical calculation it presented, regardless of any improvements. Al-Nayem’s expert testified that the DOT property comprised 7.65 percent of the total property; 7.65 percent of the purchase price was $126,225. Adding the stranded portion of the property increased the percentage to 13.5, putting damages at $222,750. The parties agreed that the amount of the title company settlement would be a setoff to any damages award. At the close of Al-Nayem’s case, the trial court granted Mr. Allard’s motion for an involuntary dismissal because Al-Nayem failed to present competent, substantial evidence of damages.
I. INVOLUNTARY DISMISSAL
We review the judgment granting the motion for involuntary dismissal at the close of Al-Nayem’s case de novo. See Brundage v. Bank of Am., 996 So.2d 877, 881 (Fla. 4th DCA 2008).
In granting Mr. Allard’s motion, the trial court noted that Burton did not address the effect of property improvements on the damages calculation. It reasoned that Al-Nayem’s method would unjustly award Al-Nayem the proportionate value, if any, of the restaurant improvements to which its use and enjoyment were unimpaired. The trial court ruled that the correct measure of damages must account for the value of improvements. If Al-Nayem’s interpretation of Burton is to apply, “the calculation should occur after deduction of the value of substantial unaffected improvements to the property from the purchase price.” We agree. Burton refers to “value,” which, in our view, requires more than the simple calculation advanced by Al-Nayem.
Involuntary dismissal is proper where there is inadequate proof at trial on the correct measure of damages. See Fla. R. Civ. P. 1.420(b)[4]; Teca, Inc. v. WM-TAB, Inc., 726 So.2d 828, 830 (Fla. 4th DCA 1999) (noting that dismissal would have been appropriate at trial because buyer incorrectly presented only evidence of lost profits where- proper measure of damages was difference between represented value and actual value or between purchase price and actual value); Platel v. Maronda Homes Inc., of Fla., 423 So.2d 627, 629 (Fla. 5th DCA 1982) (stating that plaintiff who fails to establish damages in nonjury trial is subject to involuntary dismissal). Al-Nayem’s damages evidence was insufficient under Burton and the trial court properly granted Mr. Allard’s motion for involuntary dismissal.
II. MOTION FOR REHEARING
Al-Nayem moved for a rehearing, arguing that because Florida case law is unsettled as to the measure of damages, it should have an opportunity to present evidence of damages based on the method approved by the trial court.[5] The trial court agreed and stated that it was granting the motion to avoid the injustice of a potential windfall to Mr. Allard.
The applicable standard of review is abuse of discretion. Campagna v. Cope, 971 So.2d 243, 251 (Fla. 2d DCA 2008). However, we apply this standard in a re *202 stricted manner because the reason for granting the rehearing involves a question of law. See Krolick v. Monroe, 909 So.2d 910, 913-14 (Fla. 2d DCA 2005); Bulkmatic Transp. Co. v. Taylor, 860 So.2d 436, 444 (Fla. 1st DCA 2003).
The trial court relied on MCI WorldCom Network Services, Inc. v. Mastec, Inc., 995 So.2d 221, 223 (Fla.2008), for the proposition that “[generally, a person or entity injured by either a breach of contract or by a wrongful or negligent act or omission of another is entitled to recover a fair and just compensation that is commensurate with the resulting injury or damage.” The Eleventh Circuit certified MCI WorldCom to our supreme court because the case raised unsettled questions of Florida law as to the proper measure of damages for Mastec’s severing of an MCI underground fiber-optic cable. Id. at 222-23. MCI claimed damages for repairs, loss of use, and punitive damages. Id. The supreme court held that MCI could not recover loss-of-use damages because it was able to redirect telecommunications traffic to other cables in its system and thus suffered no disruption of service. Id. However, MCI could still recover damages for repairs performed on the damaged cable. Id. at 225.
Even if we accept Al-Nayem’s argument that, as in MCI WorldCom, the proper measure of damages is an unsettled question of Florida law, that case is distinguishable. In contrast to the MCI Worldcom plaintiff, Al-Nayem persisted that its interpretation of Burton was the only correct measure of damages, despite considerable debate below about the correct measure of damages and Mr. Allard’s argument that improvements must be considered. Al-Nayem “consciously elected to proceed upon ... what was ultimately determined to be an invalid theory of damages.” See St. Petersburg Hous. Auth. v. J.R. Dev., 706 So.2d 1377, 1378 (Fla. 2d DCA 1998).
The trial court improperly granted a rehearing. “[A] party’s failure to prove damages is not a proper ground for rehearing....” Id. “Rehearing is not intended as a device to present additional evidence that was available, although not presented, at the original trial.” Id. Accordingly, the rehearing was improperly granted and we reverse as to that issue.
Affirmed in part and reversed in part.
NORTHCUTT, J., Concurs.
VILLANTI, J., Dissents with opinion.

.See also Bowen v. Willard, 340 So.2d 110, 112 (Fla.1976) (“[Ajppeals taken from new trial orders shall be treated as appeals from final judgments to the extent possible, and ... appellate courts of this state have the authority to deal with other appealable issues.”); City of Tampa v. Jorda, 445 So.2d 699, 700 n. 1 (Fla. 2d DCA 1984) (noting that, pursuant to Bowen, City was entitled to argue in appeal from order granting new trial that directed verdict was error); Hill v. Am. Med. Affiliates, Inc., 387 So.2d 1056, 1058 (Fla. 2d DCA 1980) (explaining that because reversal of order granting new trial renders entry of final judgment a purely ministerial act, reviewing court should go ahead and consider other issues raised that could be raised on appeal from final judgment); Seaboard Coastline R.R. Co. v. Dennard, 399 So.2d 490, 492 (Fla. 3d DCA 1981) (noting jurisdiction to entertain cross-appeal where appeal was taken from new trial order).

. Al-Nayem settled with the title company for $90,000.

. The covenant of seisin is “an assurance that the grantor has the very estate in quantity and quality which he purports to convey.” Burton v. Price, 105 Fla. 544, 141 So. 728, 729 (Fla.1932). Seisin is breached when the buyer acquires no title or possession by a deed of conveyance containing covenants of seisin. Williams v. Azar, 47 So.2d 624, 626 (Fla.1950).

. After a party seeking affirmative relief in an action tried by the court without a jury has completed the presentation of evidence, any other party may move for a dismissal on the ground that on the facts and the law the party seeking affirmative relief has shown no right to relief, without waiving the right to offer evidence if the motion is not granted.

. At trial, Al-Nayem offered no alternative methodology. Prior to trial, it did not attempt to secure a ruling from the trial court on the appropriate measure of damages.